## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

ISAIAH EARL THOMAS,

               Petitioner,

vs.

UNITED STATES OF AMERICA,

               Respondent.

No. C 14-4010-MWB
(No. CR 11-4074-MWB)

**MEMORANDUM OPINION AND ORDER REGARDING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**................................................................**2**
    A.    *Criminal Proceedings* ..................................................**2**
    B.    *Section 2255 Proceedings* ...........................................**9**

II.    **LEGAL ANALYSIS** ...................................................... **10**
    A.    *General Standards For § 2255 Relief*......................... **10**
        1.    *Grounds for § 2255 relief*................................. **10**
        2.    *Standards for an evidentiary hearing*.................. **13**
    B.    *Thomas's Claims Of Ineffective Assistance of Counsel* ...................................................................... **14**
        1.    *"Ineffective assistance of counsel" standards* ...................... **14**
        2.    *First criminal counsel's failure to advise Thomas of the potential for a career offender enhancement*................... **16**
            a.    *Arguments of the parties* ....................................... **16**
            b.    *Analysis* .............................................................. **18**
        3.    *Second criminal counsel's failure to challenge the career offender enhancement* ......................................... **22**
            a.    *Arguments of the parties* ....................................... **23**
            b.    *Analysis* .............................................................. **24**
    C.    *Certificate Of Appealability*...................................... **29**

III.    **CONCLUSION** .............................................................. **30**

This case is before me on petitioner Isaiah Earl Thomas's February 10, 2014, *pro se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (§ 2255 Motion) (Civ. docket no. 1). Thomas seeks relief, on numerous grounds, from his guilty plea to firearm and drug-trafficking charges and his sentence as a career offender to 327 months of imprisonment. Thomas's appointed *habeas* counsel has briefed only two of Thomas's many claims, both alleging ineffective assistance of counsel concerning Thomas's career offender enhancement. The respondent denies that Thomas is entitled to any relief on his claims.

## I.    INTRODUCTION
### A.    Criminal Proceedings

On June 22, 2011, Thomas was indicted as the sole defendant in a three-count Indictment. **Count 1** of the Indictment charged that, from about January 1, 2010, and continuing through about February 23, 2011, Thomas conspired to distribute an unspecified amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(d), and 846. **Count 2** charged that, from January 1, 2010, and continuing through about February 23, 2011, Thomas knowingly possessed a firearm in furtherance of a drug-trafficking crime, that is, conspiracy to distribute marijuana as charged in **Count 1**, in violation of 18 U.S.C. § 924(c)(1)(A). The firearms alleged in this count were a .22 caliber derringer and a .40 caliber pistol. **Count 3** charged that, on or about February 23, 2011, Thomas knowingly possessed the same firearms alleged in **Count 2** having previously been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). This count identified two prior convictions for aggravated misdemeanor domestic abuse assault, in 2006 and 2002, respectively, one prior conviction for serious misdemeanor domestic abuse assault, in 2001, and a

conviction for serious misdemeanor assault in 2000. The Indictment included a forfeiture allegation as to any firearms or ammunition involved or used in knowing violation of 18 U.S.C. § 922(g)(9). Thomas's first criminal counsel was appointed to represent him, and Thomas entered pleas of not guilty to all charges on August 3, 2011.

Prior to trial, which was eventually set to begin on October 3, 2011, the court scheduled a change-of-plea hearing for September 22, 2011. *See* Order (Crim. docket no. 14). In an Affidavit (Civ. docket no. 1-4), attached to his § 2255 Motion, Thomas avers that his first criminal counsel had advised him that the prosecution had offered him an open plea (*i.e.*, without a plea agreement), but that his first criminal counsel "never consulted me/or advised me that I would be facing or being [sic] subjected to a Career Offender or Armed Criminal enhancement." In contrast, in an Affidavit (Civ. docket no. 16-1), attached to the respondent's Response And Memorandum In Support Of Government's Response To Defendant's Motion Under 28 U.S.C. § 2255, Thomas's first criminal counsel avers, as follows:

> In meeting with Mr. Thomas, I explained to him my concerns about the career offender enhancement applying. I concluded that I did not think it would apply, but that I could be wrong, and explained to him again the starting Guideline range if it did apply. We discussed this at length, and I expressed some trepidation about the matter. I explained the rationale behind acceptance of responsibility, and suggested how I would present his case at sentencing. It was still his desire to plead guilty.

Affidavit Of First Criminal Counsel, unnumbered ¶ 3. Thomas did not subsequently attempt to refute, by any statement under oath, his first criminal counsel's statements, nor request an opportunity to challenge them.

On September 22, 2011, Thomas pleaded guilty to all three counts against him, before Chief United States Magistrate Judge Paul A. Zoss. *See* Plea Hearing Minutes

(Crim. docket no. 17). The transcript of the plea hearing contains absolutely no reference to the possibility of a career offender enhancement in the parties' discussion of Thomas's possible sentencing range. *See* Transcript Of Plea Hearing (Crim. docket no. 30). Indeed, the prosecutor suggested that Thomas's likely guidelines range was 84 to 90 months of imprisonment, and Thomas's first criminal counsel concurred. *See id*. at 22:21-23:13. Judge Zoss did advise Thomas that his sentence could be higher (or lower), because the guidelines are advisory, *see, e.g., id.* at 23:14-26:7, and that his maximum statutory sentence on **Count 2** was life imprisonment. *See id*. at 16:13-18, 25:19-21. The prosecutor reiterated "that the defendant is aware that he could face up to life in prison." *See id*. at 17:17-18. The prosecutor also opined,

> And one thing I should note here, too, is this is one of those unusual cases. At least the guidelines will be probably even less important than they are in the typical advisory setting. Because his criminal history is – is so long and his particular instant offense has so many disturbing characteristics to it, he's likely going to be either within the guidelines subject to several upward departures or perhaps even subject to upward variances that the guidelines are going to very quickly be overcome by the other sentencing factors.

Plea Hearing Transcript at 22:4-13. Thomas informed Judge Zoss that he understood how sentencing could go in his case. *See id*. at 26:6-8. I accepted Thomas's guilty plea on September 22, 2011, after the parties waived the time for objections to Judge Zoss's Report And Recommendation that I accept Thomas's plea. *See* Order (Crim. docket no. 21).

Approximately four months later, on January 30, 2012, Thomas filed a *pro se* request for new counsel. *See* Motion For New Counsel (Crim. docket no. 25). Thomas stated that he believed that his first criminal counsel had "misguided" him into believing that it was in his best interest to plead guilty to the charges. Thomas cited as examples

the fact that he possessed far less than the quantity of marijuana that would trigger a mandatory minimum sentence and the fact that he denied ever possessing a firearm in furtherance of any drug crimes. He contends that, nevertheless, his first criminal counsel told him that, if he did not plead guilty immediately, he would lose three points for acceptance of responsibility and face a much greater sentence. *See id*. After an *ex parte* hearing, Judge Zoss granted Thomas's request for a new attorney, *see* Order (Crim. docket no. 28), and Thomas's second criminal counsel was appointed to represent him.

On March 5, 2012, Thomas, through his second criminal counsel, requested leave to file under seal a motion to withdraw his guilty plea, and on March 7, 2012, with leave of court, he filed that Motion To Withdraw Guilty Plea (Crim. docket no. 36). Thomas's grounds for seeking to withdraw his guilty plea were that he did not fully appreciate the nature of the conspiracy charge and the consequences of his guilty plea and that he was "grossly misinformed" as to the potential application of the guidelines and his potential sentence. *Id*. Not coincidentally, on March 6, 2012, the probation officer had filed the First Draft Presentence Investigation Report (1st Draft PSIR) (Crim. docket no. 35), which scored Thomas as a career offender and determined his advisory guidelines range to be 262 to 327 months of incarceration, with a 3-level reduction for acceptance of responsibility. 1st Draft PSIR at ¶ 45.[1] In an Order (Crim. docket no. 45), filed April 5, 2012, I denied Thomas's Motion To Withdraw Guilty Plea, on the ground that there was no "fair and just reason" for allowing him to withdraw his plea. Specifically, I found that Judge Zoss had thoroughly discussed the requirements for a conviction on the conspiracy charge in **Count 1**, and that he had also made clear to Thomas that he could face a sentence up to life imprisonment on **Count 2**, notwithstanding lower estimates of

---

[1] The 1st Draft PSIR indicated that Thomas's advisory guidelines range would be 360 months to life, with no reduction for acceptance of responsibility, and 292 to 365 months, with a 2-level reduction for acceptance of responsibility. 1st Draft PSIR at ¶ 45.

his advisory sentencing guidelines range at the plea hearing. The Amended And Final Presentence Investigation Report (Final PSIR), filed on May 29, 2012, after the parties' objections, included the same calculation of Thomas's advisory sentencing guidelines range as a career offender, to which Thomas's second criminal counsel had made no objections. Thomas's second criminal counsel also did not lodge any objections to the three offenses identified in the Final PSIR as predicate offenses for career offender status.

At Thomas's sentencing hearing, on May 31, 2012, Sentencing Hearing Minutes (Crim. docket no. 57), and in a Judgment (Crim. docket no. 59), I sentenced Thomas as a career offender to a total term of 327 months. I stated that this sentence consisted of 60 months on **Count 1**, 120 months on **Count 3**, to be served consecutive to the term on **Count 1**, and 147 months on **Count 2**, to be served consecutive to the term on **Count 3**. In doing so, I granted the prosecution's motion for upward departure and denied Thomas's motion for a downward variance. As to consideration of the 18 U.S.C. § 3553(a) factors, I found some mitigating factors, but I concluded that those mitigating factors were far outweighed by other factors:

> THE COURT: However, this case presents some of the most egregious, repetitive, violent actions of anyone I've sentenced. It presents a criminal history that is longstanding. I mean, I don't know how to say it. You're a serial, recidivist, violent offender. And the victims and society need protection from you.
>
> I'm not here to judge you. You mentioned you weren't a bad person, and that's, of course, what your letters said. I'm not in a position to judge good or bad. I'm in a position to judge conduct.
>
> And based on the evidence that I've heard and the unobjected-to portions of the presentence report, the conduct is shocking. I'm not shocked by much. I've been at this for 18 years, sentenced more than 400 defendants last year in 3

6

different -- actually 4 districts. Not much shocks me. This case is shocking. Any one of these incidents would be shocking to me, but the repetitive nature of it, I mean, I actually can probably overlook if it happened one time, if it happened several years ago and you'd gone to treatment and done the batterers' program and done something affirmative to try and prevent it from happening again. You know, I'm probably one of the few judges in the country that would actually be able to overlook that and give a lower sentence.

But the amount of violence, I mean, you're just lucky you're not in state court looking at a probably second-degree murder conviction or maybe even a first-degree murder conviction. I mean, you're lucky because **[it] could have happened in this case.

And, you know, the guideline range here is incredibly lengthy for a conspiracy to distribute less than 50 kilograms of marijuana, possession of a firearm in furtherance of a drug-trafficking offense, and possession of a firearm after having been convicted of domestic violence. I mean, I don't think I've ever had those precise combination of crimes. But, you know, the guideline range would be half of what it would be had you not been a career offender.

And like I said, I frequently disagree with how the career offender guideline works. But in this case it doesn't do an injustice at all. I think you are a poster person for how Congress intended federal judges to sentence people with repetitive violence. And I just can't overlook the violence, and I can't overlook the guns, and I can't overlook the use of the guns to commit violence. And I can't overlook 29 criminal history points, 24 of which are scored.

So I'm denying the defendant's motion for a downward variance because the substantial aggravating factors of recidivist criminal activity coupled with firearms in this case and firearms used to inflict torture, violence, I can't overlook

that when I have to balance those factors. The violence and the use of the weapons to commit the violence so far outweighs the mitigating factors. So the motion for downward variance is denied.

Currently we have a guideline range of 262 to 327 months. I usually look -- well, I look very hard for ways to try and sentence at the bottom of a guideline range if I'm not doing a downward variance. Usually I'm doing a downward variance in a substantial case where there's a lot of time. But I've already ruled out a downward variance in this case.

I'm going to use the fact that I found that the defendant's criminal history is substantially underrepresented to nudge me substantially off my often approach ** bottom of the guideline range up to the top of the guideline range. I'd be within my discretion to go higher, but 327 months is a very, very lengthy sentence, and I have to pick a sentence that is sufficient but not greater than necessary. In my judgment 327 months is really as low as I could possibly go.

Sentencing Hearing Transcript (Crim. docket no. 64), 65:3-67:17.

Thomas's second criminal counsel filed a Notice Of Appeal (Crim. docket no. 61) of the judgment and sentence on June 11, 2012. In a *per curiam* opinion, filed February 13, 2013, and docketed in this court that same day (Crim. docket no. 75), the Eighth Circuit Court of Appeals affirmed my denial of Thomas's motion to withdraw his guilty plea. The court explained that it agreed with my determination that Thomas understood the nature of the conspiracy charge in the case and that Thomas was told of his statutory range and was also told the advisory sentencing guidelines would apply. The court also concluded that the dramatic increase in Thomas's sentencing range as a career offender over the estimates of his guidelines range at his plea hearing was not a basis to reject prior precedent, because Thomas was advised at his plea hearing that the 84 to 90 months estimate was likely the low estimate of the guidelines range, due to potential departures

and variances. Mandate on the appellate court's decision issued on March 6, 2013. *See* Mandate (Crim. docket no. 77).

Subsequent proceedings in Thomas's criminal case in this court do not appear to be relevant to the disposition of his § 2255 Motion.

### B.     Section 2255 Proceedings

As I noted, above, Thomas filed his *pro se* § 2255 Motion on February 10, 2014, in which he asserted numerous grounds for relief. By Order (Civ. docket no. 2), filed February 10, 2014, I directed the respondent to file an answer or other appropriate response. The Respondent filed an Answer (Civ. docket no. 3), consisting of a general denial of Thomas's factual allegations, on February 24, 2014. By Order (Civ. docket no. 4), filed February 28, 2014, I directed the Clerk of Court to appoint counsel (*habeas* counsel) to represent Thomas in these proceedings and set deadlines for Thomas to file a brief, with the aid of *habeas* counsel, for the respondent to file a response brief, and for Thomas to file a reply, if any. I also directed criminal counsel to cooperate with the respondent by providing information, documents, and an affidavit, if necessary.

On May 30, 2014, Thomas filed his Opening Brief (Civ. docket no. 9), with the aid of *habeas* counsel. In that Brief, *habeas* counsel described Thomas's eleven *pro se* claims, but stated that, after review of the files and records, *habeas* counsel would brief "only the claims for failing to properly investigate and advise Thomas of the near guarantee of a career criminal enhancement at sentencing and failing to litigate whether Thomas actually qualified under the language of the career offender guideline and the interpreting case law." Petitioner's Brief at 8. *Habeas* counsel stated that "the balance of Thomas' claims" were not briefed, because "the facts and law do not provide support for these claims." *Id.* at 8-9. Because Thomas's other *pro se* claims were not briefed, and Thomas has made no objection to his *habeas* counsel's characterization of those

9

claims, I deem all but the two claims briefed by Thomas's *habeas* counsel to be waived or abandoned.

On October 2, 2014, the respondent filed its Response And Memorandum In Support Of Government's Response To Defendant's Motion Under 28 U.S.C. § 2255 (Respondent's Response) (Civ. docket no. 16), to which the respondent attached affidavits from Thomas's first and second criminal counsel (Civ. docket nos. 16-1 and 16-2, respectively). On October 23, 2014, Thomas filed his Reply Brief (Civ. docket no. 17), again with the aid of *habeas* counsel.

There, unfortunately, this matter languished for more than a year, owing to the press of other business and clerical oversight by chambers staff.

## II.    LEGAL ANALYSIS
### A.    General Standards For § 2255 Relief
#### 1.    Grounds for § 2255 relief

"Section 2255 [of Title 28 of the United States Code] 'was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)). Nevertheless, "[l]ike habeas corpus, this remedy 'does not encompass all claimed errors in conviction and sentencing.'" *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Specifically, § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the

> court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Thus, § 2255 "provides a remedy for jurisdictional and constitutional errors," but "[b]eyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; 'an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."'" *Sun Bear*, 688 F.3d at 704 (quoting *Addonizio*, 442 U.S. at 185, in turn quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) ("'Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.'" (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

In addition, where an issue was raised, considered, and rejected on the merits on direct appeal, "it may not be raised in a motion for post-conviction relief under 28 U.S.C. § 2255 or § 2241." *United States v. Rhodes*, 730 F.3d 727, 731 (8th Cir. 2013). Also, where a claim was not raised on direct appeal, it generally may not be raised in a § 2255 motion. *Walking Eagle*, 742 F.3d at 1082. A petitioner may overcome "procedural default" from failure to raise a claim on direct appeal, however, if the petitioner establishes both "'cause for the procedural default and actual prejudice resulting from the error.'" *Id*. (quoting *Apfel*, 97 F.3d at 1076, in turn citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). "'Absent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice.'" *Id*. (quoting *Apfel*, 97 F.3d at 1076)).

Indeed, "ineffective assistance of counsel" claims are not procedurally defaulted when brought for the first time pursuant to § 2255. *Massaro v. United States*, 538 U.S.

500, 508 (2003). The Eighth Circuit Court of Appeals has also expressly recognized that a claim of "ineffective assistance of counsel" should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, Thomas's claims of ineffective assistance of his two criminal counsel are properly and timely presented in § 2255 proceedings.

Not only does ineffective assistance of counsel establish "cause and prejudice" to overcome procedural default, in my experience, such claims are far and away the most common claims for § 2255 relief. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel not only at trial, but at sentencing, on direct appeal, and during other "critical" phases of the criminal proceedings. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) (negotiation of a plea bargain); *Burger v. Kemp*, 483 U.S. 776, 803–04 (1987) (pretrial plea negotiations); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (direct appeal); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (sentencing). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). I will consider the standards applicable to ineffective assistance of counsel claims in more detail when I turn to consideration of Thomas's specific ineffective assistance of counsel claims.

## 2.    *Standards for an evidentiary hearing*

One further procedural matter that is often of considerable importance in § 2255 proceedings is the standard for an evidentiary hearing. Although Thomas's *habeas* counsel has not expressly requested an evidentiary hearing, the respondent has expressly argued that no hearing is required, here, because "[r]eview of the motion, files and record conclusively show that [Thomas] is not entitled to relief because there is sufficient evidence to support Movant's conviction." Respondent's Brief at 12-13.

As the Eighth Circuit Court of Appeals recently explained,

> "Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." [*Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013)]. "The district court is not permitted to make a credibility determination on the affidavits alone." *Id*. at 1206.

*United States v. Sellner*, 773 F.3d 927, 929 (8th Cir. 2014). Indeed, "'[w]here petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record 'affirmatively refutes the factual assertions upon which [the claim] is based.''" *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (citing *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007), in turn quoting *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994)). On the other hand,

> [The district court] may . . . deny an evidentiary hearing if "(1) the [petitioner's] allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." [*Thomas*, 737 F.3d] at 1206–07 (alterations in original) (quoting *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir.2006)).

*Sellner*, 773 F.3d at 929-930; *accord Anderson v. United States*, 762 F.3d 787, 792 (8th Cir. 2014) (citing 28 U.S.C. § 2255(b)); *Franco*, 762 F.3d at 763; *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013).

The district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *Sellner*, 773 F.3d at 929; *see also United States v. Frausto*, 754 F.3d 640, 642 (8th Cir. 2014) (explaining that, to determine whether the district court abused its discretion in denying an evidentiary hearing, the court must review *de novo* the validity of a petitioner's § 2255 claims). I will determine whether an evidentiary hearing is necessary on each of Thomas's briefed claims, in turn.

### B. Thomas's Claims Of Ineffective Assistance of Counsel

As explained above, the only two claims briefed by Thomas's *habeas* counsel are claims of ineffective assistance of his two criminal counsel. Before considering these claims separately, I will summarize the requirements for proof of an ineffective assistance of counsel claim.

### 1. "Ineffective assistance of counsel" standards

As the Eighth Circuit Court of Appeals has explained,

> "Normally, in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir.2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Sweeney v. United States*, 766 F.3d 857, 859-60 (8th Cir. 2014). "Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" *Hyles v. United*

*States*, 754 F.3d 530, 533 (8th Cir. 2014) (quoting *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013)). These two prongs require some further explication.

"Deficient" performance is performance that falls "'below an objective standard of reasonableness,'" *Lafler v. Cooper*, ___ U.S. ___, ___, 132 U.S. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)), that is, conduct that failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). Thus, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687)).

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ___, 131 S. Ct., at 791.

*Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). As the Eighth Circuit Court of Appeals has explained, however,

> [P]rejudice may be presumed when the defendant experiences a "complete denial of counsel" at a critical stage of his trial. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039,

> 80 L.Ed.2d 657 (1984). "[T]he trial is the paradigmatic
> critical stage." *United States v. Turner*, 975 F.2d 490, 496
> (8th Cir.1992).

*Sweeney*, 766 F.3d at 859-60.

I now turn to consideration of Thomas's two claims of ineffective assistance of criminal counsel briefed by his *habeas* counsel.

### 2.  *First criminal counsel's failure to advise Thomas of the potential for a career offender enhancement*

The first claim briefed by Thomas's *habeas* counsel is the alleged failure of Thomas's first criminal counsel to properly investigate and advise Thomas of the "near guarantee" of a career criminal enhancement at sentencing.  The respondent denies that Thomas is entitled to any relief on this claim.

### a.  *Arguments of the parties*

Thomas argues that the denial of his motion to withdraw his guilty plea does not foreclose his present claim of ineffective assistance of counsel as to advice about his potential for a career offender enhancement, and the respondent does not argue otherwise. More specifically, as to deficient performance of counsel, Thomas argues that the only issue that was in doubt concerning the applicability of the career offender enhancement was whether he had previously been convicted of at least two predicate felony drug crimes or crimes of violence.  He contends that, from the charging of **Count 3**, his first criminal counsel should have been on notice of possible crimes of domestic violence, and his prior criminal history also included a conviction for delivery of an imitation controlled substance, all of which would have counted as felonies under federal law.  Thomas contends that, because all of these previous offenses were in Iowa, records of them should have been readily available to his first criminal counsel.  Thus, he contends that it should have been obvious to reasonably competent counsel that he was at least potentially subject

to a career offender enhancement, but his first criminal counsel never brought that to his attention before he pleaded guilty.

Thomas also contends that Judge Zoss's warning at his plea hearing about a possible life sentence did not cure his first criminal counsel's deficient performance, because it is counsel's duty to properly advise a defendant of his likely sentence prior to the defendant entering into a guilty plea. Thomas alleges that his first criminal counsel actually informed him that he did *not* fall within the requirements for a career offender enhancement, or at the very least, told him that he did not think he would. Thomas also points out that the possibility of such an enhancement was never discussed during his plea hearing.

As to prejudice, Thomas points out that he has averred that he would not have pleaded guilty, if he had been properly advised of the potential for the career offender enhancement. Thomas argues that the possibility of an acceptance of responsibility reduction, if he pleaded guilty, "meant nothing," once the career offender guidelines were applied, so that there was no advantage to pleading guilty.

The respondent counters that, taking the issue of prejudice first, there was none even if Thomas's first criminal counsel performed deficiently, because Thomas was made aware of his possible sentencing exposure before he entered his guilty plea. While the respondent acknowledges that the parties gave "rough" estimates of Thomas's potential sentence, without any reference to a career offender enhancement, Judge Zoss did warn Thomas of his potential for a life sentence and the possibility that any advisory sentencing guidelines calculation could be higher (or lower) than the parties had estimated. Thus, the respondent argues, Thomas could not have been surprised when the PSIR indicated a higher advisory sentencing guidelines range, but still less than life.

The respondent also argues that Thomas's first criminal counsel's performance was not deficient, because expressly identifying the possible career offender enhancement

is not required. Moreover, the respondent argues that, according to his affidavit, Thomas's first criminal counsel did research Thomas's criminal history and the possibility of a career criminal enhancement and discussed those matters with Thomas. Although the respondent concedes that Thomas's first criminal counsel did not think the career offender enhancement would apply, the respondent points out that first criminal counsel, nevertheless, explained to Thomas that he could be wrong about that, and then explained what Thomas's guidelines range would be both with and without such an enhancement.

In reply, Thomas argues that, even after *Booker*, a defense attorney must still properly calculate a defendant's advisory guidelines range, because that is the starting point for the sentencing determination. Thomas points out that his first criminal counsel has not offered in his affidavit any explanation of why he did not think the career offender enhancement would not apply, and such an enhancement was never mentioned during the plea hearing. Thomas also argues that deficient performance cannot be covered by stating, "I might be wrong," where, as here, it appears that there was either a lack of research and investigation or a lack of understanding behind the guess. Thomas argues that, the case cited by the respondent as holding that it is not necessary to advise a defendant that the career offender enhancement might apply is distinguishable, because, in this case, the potential applicability of the enhancement was obvious, so that it was not impossible to know that it might apply until the PSIR was drafted. Thomas also argues that the difference between the estimated guidelines range of 84 to 90 months and the career offender guidelines range of 262 to 327 months proves prejudice. He contends that a tripling of his estimated guidelines sentence was not likely, even considering his criminal history, without a career offender enhancement.

### b. *Analysis*

There is no question "that *Strickland* applies to ineffective assistance claims arising out of the plea bargaining process." *See, e.g., Wanatee v. Ault*, 259 F.3d 700, 703 (8th

Cir. 2001) (citing *Hill*, 474 U.S. at 58); *accord Padilla*, 559 U.S. at 373. Moreover, trial counsel certainly has an obligation to advise a defendant about the benefits and risks of pleading guilty or going to trial and about the likely sentencing range if the defendant goes to trial and is convicted or pleads guilty with or without a plea agreement. *See, e.g., United States v. Hernandez*, 450 F. Supp. 2d 950, 959 (N.D. Iowa 2006). Here, however, Thomas's claim that his first criminal counsel failed to meet these obligations is contradicted by the record, so that no evidentiary hearing is required. *Sellner*, 773 F.3d at 929-930.

The record, here, shows that Thomas's first criminal counsel fulfilled his duty to communicate with Thomas about the possibility of a career offender enhancement. Specifically, Thomas's first criminal counsel's efforts to inform Thomas about options for and the comparative risks of going to trial or accepting a plea agreement were objectively reasonable. *See Lafler*, ___ U.S. at ___, 132 U.S. at 1384 (the petitioner must show that trial counsel's performance fell "'below an objective standard of reasonableness'" (quoting *Hill*, 474 U.S. at 57)). Thomas's first criminal counsel has averred that he did explain to Thomas his concerns about application of the career offender enhancement, that he did not think it would apply, but that he could be wrong, so that he explained to him again what the starting guidelines range would be, if the enhancement did apply. Thomas's first criminal counsel has also averred that he discussed this issue with Thomas "at length," as well as the benefits of acceptance of responsibility, and Thomas expressed his continuing desire to plead guilty. *See* Affidavit Of First Criminal Counsel, unnumbered ¶ 3 (quoted in pertinent part at 4). Thomas has not attempted to rebut his first criminal counsel's statements on this point with any statement under oath, so that there is no basis to find that his first criminal counsel failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney in this respect. *Strickland*, 466 U.S. at 687; *Donnell*, 765 F.3d at 821. Thomas's

contentions that his first criminal counsel failed to give him proper advice about and failed to investigate or understand the possibility of a career offender enhancement are simply contradicted by the record evidence.

Furthermore, Thomas has failed to establish the "prejudice" prong of this ineffective assistance of counsel claim. *See Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384; *Cullen*, 563 U.S. at 189. The respondent has focused on the wrong measure of "prejudice" for this claim, by focusing on whether Thomas was made aware of his possible sentencing exposure, by the judge taking his plea, if not by his counsel, before he entered his guilty plea. The proper measure of "prejudice" for a claim of ineffective assistance of counsel in the discussion of a plea, however, is whether "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *See, e.g., Frausto*, 754 F.3d at 643 (quoting *Hill*, 474 U.S. at 59).

Applying the proper measure of "prejudice," it is true that these proceedings are not the first ones in which Thomas has asserted that he would not have pleaded guilty, if he had been advised of the possibility of a career offender enhancement. Rather, he made the same assertion in support of his motion to withdraw his guilty plea in his criminal proceedings. That bald assertion is not dispositive, however, because Thomas offers nothing persuasive to support it.

First, contrary to Thomas's present contentions, there was sufficient potential benefit to acceptance of responsibility, even if he was found to be a career offender, to make a guilty plea reasonable, even attractive. As I pointed out, above, at page 5 and footnote 3, acceptance of responsibility *did* continue to reduce Thomas's potential sentence, even with the career offender enhancement, by a substantial amount. Both his 1st Draft PSIR and his Final PSIR show that Thomas's enhanced guidelines range went from 360 months to life, with no reduction for acceptance of responsibility, to 292 to 365

months, with a 2-level reduction for acceptance of responsibility, and to 262 to 327 months, with a 3-level reduction for acceptance of responsibility. 1st Draft PSIR at ¶ 45; Final PSIR at ¶ 45. A "low end" reduction of almost 100 months, and a "high end" reduction from life to 327 months belies Thomas's contention that acceptance of responsibility "meant nothing" once the career offender guideline applied. Thus, Thomas would *still* have had significant incentive to plead guilty, even if he was aware of the potential for a career offender enhancement.

Second, the difference between Thomas's estimated sentencing guidelines range at his plea hearing and his actual sentencing guidelines range in the PSIRs does not prove prejudice, as Thomas contends. A defendant's potential sentence is certainly a reasonable factor for a defendant to consider in deciding whether or not to plead guilty or to go to trial, but it is not the only factor. Thomas's attempt to point to weaknesses in the prosecution's case—specifically, his contention that he did not conspire to distribute marijuana or possess a firearm in furtherance of a drug conspiracy—ring hollow, here, where it is clear from the record available prior to Thomas's guilty plea that the prosecution had sufficient evidence to sustain a conviction on, or to establish the basis for guilty pleas to, all of the charged offenses. The prosecution's Rule 11 letter (Crim. docket no. 15), which was available to Thomas prior to his plea hearing, properly stated the elements of the charged conspiracy. Plea Hearing Transcript at 8:19-9:23. Also, the prosecution outlined its evidence supporting the conspiracy charge during the plea hearing, and Thomas recited his understanding of and commission of each of the properly defined elements of the conspiracy offense during the plea hearing. *Id*. at 9:24-11:11. Again, the prejudice question is not whether Thomas got as good a deal as he hoped for by pleading guilty, the prejudice question is whether Thomas would still have chosen to plead guilty, rather than go to trial, *if properly advised. See Frausto*, 754 F.3d at 643; *see also Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997) (rejecting an

ineffective assistance of counsel claim concerning a plea, because "[t]here is no indication that Matthews would not have pleaded guilty had his counsel, in addition to the trial judge, properly advised him of the maximum potential sentence."). Here, where there was still a significant benefit in pleading guilty, in the form of significantly lower sentencing guidelines ranges for acceptance of responsibility, even if Thomas had been properly advised of the potential applicability of the career offender enhancement, versus going to trial, his contentions that he would not have pleaded guilty if properly advised are unpersuasive.

My decision in *United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114 (N.D. Iowa 2007), on which Thomas substantially relies, does not require a different result. For example, unlike the defendant in *Marcos-Quiroga*, who was told by his counsel that the career offender would *not* apply, Thomas was told by his first criminal counsel that it *might apply*, and Thomas's first criminal counsel then gave Thomas a preview of what his guidelines sentence would be with such an enhancement. This undermines the credibility of Thomas's contention that he would not have pleaded guilty if properly advised, because he *was* properly advised. I also am not convinced, as I was in *Marcos-Quiroga*, that Thomas's decision about pleading guilty was based solely or primarily on the belief that he would not be scored as a career offender, where Thomas was advised that he *might be* scored as a career offender and there were still significant benefits to pleading guilty (acceptance of responsibility reductions), even if he was scored as a career offender.

This claim is denied.

### 3. Second criminal counsel's failure to challenge the career offender enhancement

The second claim briefed by Thomas's *habeas* counsel is his claim of ineffective assistance of his second criminal counsel for failing to litigate whether Thomas actually

qualified as a career offender under the language of the applicable guideline and the interpreting case law. The respondent also denies that Thomas is entitled to relief on this claim.

### a. *Arguments of the parties*

Thomas argues that the Iowa statute defining assault, IOWA CODE § 708.1, for purposes of the statute defining domestic abuse assault, IOWA CODE § 708.2A, is "divisible," in the sense that some statutory definitions of the offense would not define crimes of violence. He also argues that his second criminal counsel did not object to the court's improper consideration of certain parts of the record (police reports) to determine whether his prior domestic abuse assault convictions were, in fact, crimes of violence and that, without more information, I could not make the necessary determination that the crimes were crimes of violence. He contends that, if his second criminal counsel had objected to the enhancement, there is a reasonable probability that he would not have been sentenced with the career criminal enhancement. Specifically, he argues that I would not have departed or varied upward anywhere near 327 months in the absence of a career offender enhancement.

The respondent counters that, even assuming Thomas's second criminal counsel performed deficiently, there was no prejudice, because I understood that the guidelines were purely advisory, independently weighed the § 3553(a) factors, and concluded that 327 months of imprisonment was a sentence that was sufficient but not greater than necessary, *inter alia*, to protect the public from Thomas. The respondent argues that the record shows that, had the career offender enhancement not applied, I would have rejected the guidelines and given Thomas the same sentence, based on his criminal history and dangerousness, so that there was no prejudice even if Thomas's second criminal counsel performed deficiently.

In reply, Thomas argues that he was still prejudiced, because a variance up to 327 months, without a career offender enhancement, was unlikely.

### b.    Analysis

The 2011 version of the Sentencing Guidelines, which was applicable to Thomas's sentencing, defines a career offender as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2011).[2]

The Final PSIR identifies the following offenses as predicate offenses for Thomas's career offender enhancement:  (1) a conviction for a domestic abuse assault, second offense, following an arrest on March 1, 2002, *see* Final PSIR at ¶ 57; (2) a conviction for delivery of an imitation controlled substance—crack cocaine, following an arrest on July 23, 2006, *see* Final PSIR at ¶ 67; and (3) a conviction for a domestic abuse assault, second offense, following an arrest on October 14, 2006, *see* Final PSIR at ¶ 70. Thomas does not contend that his second criminal counsel should have challenged the conviction for delivery of an imitation controlled substance as a predicate "controlled substance" offense.  Thomas also does not argue that his second criminal counsel should have challenged the two alleged predicate domestic abuse assault convictions on the ground that they were not "felonies" under federal law.  Rather, the only ground on which Thomas asserts that his second criminal counsel should have challenged the

---

[2] The definition is identical in the 2015 Sentencing Guidelines.  *See* U.S.S.G. § 4B1.1(a) (2015).

domestic abuse assault convictions is that they were not shown to be "crimes of violence" on the basis of appropriate documents. Because Thomas does not challenge the prior "controlled substance" conviction, and only two predicate offenses are required, *see* U.S.S.G. § 4B1.1(a), he can only establish deficient performance of his second criminal counsel if neither of the alleged domestic abuse assault convictions were "crimes of violence" on the basis of documents that I could properly consider to make that determination.

The 2011 version of the Sentencing Guidelines defines a "crime of violence," as follows:

> (a)     The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (2011).[3] In decisions antedating Thomas's sentencing, the Eighth Circuit Court of Appeals recognized that, under the appropriate approach to determining whether or not a crime is a "crime of violence" within the meaning of U.S.S.G. § 4B1.1(a), the court's "examination 'is limited to . . . the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial

---

[3] Again, the definition is identical in the 2015 Sentencing Guidelines. *See* U.S.S.G. § 4B1.2(a) (2015).

record of this information.'" *United States v. Malloy*, 614 F.3d 852, 857 (8th Cir. 2010) (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)); *United States v. Ojeda-Estrada*, 577 F.3d 871, 876 (8th Cir. 2009) (same).

Thomas is correct that the Final PSIR's description of the factual basis for his conviction for domestic abuse assault, second offense, following his arrest on March 1, 2002, appears to be based on "police reports." *See* Final PSIR at ¶ 57. Police reports are not a proper basis for the determination of whether a prior conviction is a "crime of violence" under *Shepard*, however. *See Malloy*, 614 F.3d at 857 (quoting *Shepard*, 544 U.S. at 26). The Final PSIR's description of the factual basis for Thomas's conviction for domestic abuse assault, second offense, following his arrest on October 14, 2006, is based on different documents. As to that conviction, the Final PSIR states, "The Court Complaint reflects that the defendant became angry and violent with Lakisha Thomas after she arrived home from work." Final PSIR at ¶ 70. Likewise, the October 16, 2006, Complaint initiating the criminal prosecution for this offense, stated, in part,

> The intoxicated def [sic] [*i.e.*, Thomas] became angry and violent towards the mother of his child when she arrived home from work. The victim feared for her safety. . . .

Prosecution's May 23, 2012, Sentencing Memorandum And Memorandum In Support Of It's Motion For Upward Departure (Sentencing Memorandum) (Crim. docket no. 50), Exhibit #3, 290 (Crim. docket no. 50-14, page 30). Similarly, the Trial Information for this conviction states, in pertinent part,

> The Defendant became angry and yelled at the victim, with whom he resides and who is the mother of his child, and grabbed a phone from her hand as she was trying to make a call, placing the victim in fear of immediate physical harm from the Defendant by his display of his apparent ability to execute the act. . . .

Prosecution's Sentencing Memorandum, Exhibit #3 at 292 (Crim. docket no. 50-15, page 2). The "Court Complaint" and "Trial Information" are "charging documents" that may properly be considered under *Shepard*, *see Malloy*, 614 F.3d at 857 (quoting *Shepard*, 544 U.S. at 26), and plainly were available to the prosecution and Thomas's second criminal counsel prior to his sentencing hearing. Furthermore, the fact that Thomas "became violent with Lakisha Thomas" and "grabbed a phone from her" in a manner that "plac[ed] the victim in fear of immediate physical harm from the Defendant by his display of his apparent ability to execute the act" are sufficient to establish that the domestic abuse assault, second offense, was charged under the portion of IOWA CODE § 708.1 defining an assault as "[a]ny act which is intended to place another in fear of immediate physical contact which will be painful [or] injurious . . . coupled with the apparent ability to execute the act." IOWA CODE § 708.1(2)(a). Furthermore, that definition of "assault" plainly "has as an element the use, attempted use, or threatened use of physical force against the person of another," and/or "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(1) and (2). In short, there was proper documentation under *Shepard* from which I could (and did) determine that Thomas had committed a predicate "crime of violence."

More importantly, in the context of a claim of ineffective assistance of counsel, the Eighth Circuit Court of Appeals has long recognized that counsel's refusal to advance a meritless argument cannot constitute ineffective assistance. *See, e.g., Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994); *accord Thai v Mapes*, 412 F.3d 970, 978 (8th Cir. 2005) ("In our view, [the petitioner's] claim fails because [the petitioner] cannot show that his counsel performed deficiently by failing to raise a meritless argument."). The argument that Thomas contends that his second criminal counsel

should have raised is plainly without merit in light of the record, so that his second criminal counsel did not perform deficiently by failing to raise it.

Furthermore, for the sake of completeness, the record also demonstrates that Thomas was not prejudiced by his second criminal counsel's failure to argue that none of his domestic abuse assault charges constituted predicate "crimes of violence" for the career offender enhancement. *See Sweeney*, 766 F.3d at 859-60 (an ineffective assistance claim requires proof of deficient performance and prejudice); *Hyles*, 754 F.3d at 533 ("Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" (quoting *Morelos*, 709 F.3d at 1250)). First, as I pointed out, just above, even if Thomas's second criminal counsel *had* challenged the predicate domestic abuse assault charges, *see Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384; *Cullen*, 563 U.S. at 189, there was proper documentation under *Shepard* from which I could (and did) determine that Thomas had committed a predicate "crime of violence." Second, Thomas's contention that prejudice is proved by the difference between his estimated sentencing guidelines range at his plea hearing and his actual sentencing guidelines range as a career offender is, again, unavailing, but for somewhat different reasons. I believe— and the transcript of Thomas's sentencing hearing makes clear—that I would have sentenced Thomas to 327 months, even had he not been scored as a career offender. For example, I concluded that a very long sentence was warranted, because Thomas had a "shocking" criminal record, his record was underrepresented in his criminal history scoring, and, probably most importantly, because of my independent consideration of § 3553(a) factors, including Thomas's history of violence and the need to protect his victims and society from him. *See* Sentencing Hearing Transcript (Crim. docket no. 64), 65:3-67:17 (quoted, above, beginning at page 6). I ultimately concluded—not simply because Thomas had been scored as a career offender, but because of my evaluation of the § 3553(a) factors—that "I'd be within my discretion to go higher, but 327 months is

28

a very, very lengthy sentence, and I have to pick a sentence that is sufficient but not greater than necessary. In my judgment 327 months is really as low as I could possibly go." *Id*. at 67:13-17. Thomas cannot show prejudice, because he cannot show that his sentence would have been different, even if his second criminal counsel had raised *and won* an argument that Thomas did not have a predicate domestic abuse assault offense, based on proper documentation.

 This claim is denied.

## C.   *Certificate Of Appealability*

 Denial of all of Thomas's claims for § 2255 relief, including those abandoned in briefing, raises the question of whether or not he is entitled to a certificate of appealability on those claims. In order to obtain a certificate of appealability on those claims, Thomas must make a substantial showing of the denial of a constitutional right. *See Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller–El v. Cockrell* that, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I conclude that Thomas has failed to make a substantial showing that any of his claims are debatable among reasonable jurists, that a court could resolve any of the issues

raised in those claims differently, or that any question raised in those claims deserves further proceedings. Consequently, a certificate of appealability is denied as to all of Thomas's claims. *See* 28 U.S.C. § 2253(c)(1)(B); *Miller-El*, 537 U.S. at 335-36; *Cox*, 133 F.3d at 569.

## III. CONCLUSION

Upon the foregoing,

1.    Petitioner Isaiah Earl Thomas's February 10, 2014, *pro se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (§ 2255 Motion) (Civ. docket no. 1) is **denied in its entirety**;

2.    This matter is **dismissed in its entirety**; and

3.    No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 16th day of February, 2016.

Mark W. Bennett
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA